**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DAVID WILSON,** | **Civil Action No. 15-6034 (FLW)** |
| **Plaintiff,** | |
| **V.** | **OPINION** |
| **SOMERSET COUNTY PROSECUTORS OFFICE, et al.,** | |
| **Defendants.** | |

## I.      INTRODUCTION

This matter having been opened to the Court by Defendants Somerset County Prosecutor's Office's ("SCPO") and Prosecutor Matthew Murphy's (collectively "Prosecutor Defendants") motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 12(b)(1).  For the reasons expressed in this Opinion, the Court will dismiss Plaintiff's section 1983 and New Jersey Civil Rights Act ("NJ CRA") claims pursuant to its screening authority, deny Defendants' motion to dismiss in light of the Court's *sua sponte* dismissal of the federal claims, decline supplemental jurisdiction over Plaintiff's remaining state law claims, and remand the case to the Superior Court of New Jersey, Somerset County.

## II.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff's section 1983 claims in this action are related to two previous actions that were litigated in this District.  In *Wilson v. Piazza, et al.*, an excessive force case filed on June 30, 2010 (the "2010 action"), Plaintiff alleged that on December 3, 2008, Bernard Township Police Officer Anthony Piazza discharged his weapon at him after Plaintiff had already surrendered,

1

thus causing Plaintiff to flee.[1]  (Civ. No. 10-3356 MLC, ECF No. 1.)  While that litigation was proceeding, on July 13, 2012, Plaintiff filed another action in state court against the SCPO (the "2012 action"), alleging that two Somerset County Prosecutors, Peter DeMarco and Robert Pollack, failed to obtain the internal affairs reports related to Piazza's discharge of his weapon and withheld evidence from the grand jury during Plaintiff's prosecution stemming from his 2008 arrest.  That complaint also alleged that the Somerset County Prosecutor's Office failed to train its employees on the proper disclosure of such evidence.  (*See* Civ. No. 12-5068 PGS, ECF No. 1.)  The gravamen of Plaintiff's 2012 Complaint appears to be that the withheld facts regarding the Piazza's use of his firearm would have negated Plaintiff's guilt on the resisting arrest charge.  The defendants there removed the 2012 action to federal court and moved to dismiss the complaint, and the Court dismissed the federal claims <u>with prejudice</u> on statute of limitations grounds on May 21, 2013.  The Court also declined to exercise supplemental

---

[1] According to his Complaint in the 2010 action,

> Plaintiff allege[d] that on December 3, 2008, following some sort of police chase, he exited the back seat of the car in which he was riding, got down on the ground, and surrendered to police. Plaintiff allege[d] that while he was on the ground, unarmed, not moving or resisting arrest, Defendant police officer Anthony Piazza got out of his car, drew his handgun while standing about 30 feet from Plaintiff, and yelled "Freeze." Plaintiff allege[d] that Defendant Piazza then fired his handgun at Plaintiff. Plaintiff allege[d] that he then got up off the ground, in fear for his life, and ran to hide in some bushes, where he was later found by another officer. Plaintiff allege[d] that Defendant Piazza stated in his report on the incident that his firearm accidentally discharged. Plaintiff allege[d] that he complained about the incident to Defendant Sergeant Mark Leopold, who had participated in the arrest, but that Defendant Leopold failed to investigate or take action in response to the complaint.

*Wilson v. Piazza*, No. CIV.A. 10-3356 MLC, 2011 WL 765806, at *1 (D.N.J. Feb. 22, 2011) (permitting excessive force claim to proceed against Piazza and dismissing claims against remaining police officer defendants).

jurisdiction over any remaining state law claims, and remanded the case to state court.  *See Wilson v. Somerset County Prosecutor's Office*, et al., Civ. No. 12-5068, 2013 WL 2243836, at *3 (D.N.J. May, 21, 2013).

The 2010 action against Officer Piazza eventually settled, and the parties stipulated to the dismissal of that action on December 3, 2012.  (*See* Civ. Act. No. 10-3356, ECF No. 88, Stipulation of Dismissal with Prejudice.) The stipulation of dismissal is signed only by Plaintiff and Officer Piazza, but Plaintiff alleges in the Amended Complaint filed in this action that the Somerset County Prosecutor's Office was a party to the settlement in the 2010 action.  (*See* ECF No. 7-3, Am Compl. at ¶ 4.)

The foregoing background leads to the litigation currently before the Court.  Plaintiff filed his initial Complaint on July 14, 2015 against the SCPO and Prosecutor Murphy, alleging violations of his civil rights under section 1983 and the New Jersey Civil Rights Act (NJCRA). After receiving an extension of time to Answer, Defendants moved to dismiss the Complaint on August 27, 2015.  (ECF No. 3.)  On September 5, 2015, Plaintiff wrote to the Court seeking an extension of time to file his reply, and on September 16, 2015, he submitted a motion to amend his Complaint, attaching a proposed Amended Complaint, which was docketed on September 25, 2015.  (ECF Nos. 6, 7.)

In that Amended Complaint, Plaintiff alleges that, on January 20, 2015, he was arrested in Somerset County and charged with eluding and related offenses, and was indicted approximately 45 days later.[2]  (ECF No. 15-6034, Am. Compl. at ¶¶ 1-2, 7.)  He further alleges that he sought release on bail and applied for entry into a drug rehabilitation program.  (*Id.*)  The SCPO opposed his bail application and his entry into the rehabilitation program.  In opposition to

---

[2] The arrest on January 20, 2015, appears to be unrelated to his prior arrests.

Plaintiff's application, Somerset County Prosecutor Murphy submitted a brief, dated March 20, 2015, in which he allegedly relied on a sentencing report written by the state court judge who sentenced Plaintiff in 2010 in connection with the charges arising from his December 3, 2008 arrest.  Plaintiff alleges that the sentencing report, in turn, incorporated Officer Piazza's allegedly false account of Plaintiff's 2008 arrest, and thus left out the fact that Piazza allegedly fired his gun at Plaintiff during the arrest, causing Plaintiff to flee after he had tried to surrender.  (*Id.*)

   An excerpt of the brief allegedly submitted by Prosecutor Murphy reads as follows:

> While sentencing defendant Wilson in January 2010, the [sentencing judge], recited the following eerily similar case facts,
>
>> [t]he relevant facts concerning the instant charges are: On December 3, 2008,  Bernards Township Police were on patrol on I-78 east when the officer observed a vehicle approaching him from the rear at a high rate of speed. The officer maneuvered to let the vehicle pass and ran the vehicle's license plate, determining that the vehicle was stolen. The officer closed the gap between the vehicles and activated his lights in an attempt to stop the vehicle. The vehicle failed to pull over and accelerated to over 95 mph before exiting I-78 at Exit 40, nearly crashing into another vehicle on the exit ramp. The driver passed this car and continued onto Hillcrest Road, crossing the double-yellow line into oncoming traffic and passing another vehicle before running a stop sign at the end of the road and traveling east on Valley Road. The driver again crossed into oncoming traffic, travelling at an excessive rate of speed before running a light and making a left turn onto Deep Dale Drive. The driver crashed the vehicle into the yard at 7 Deep Dale Drive and fled on foot, being located a short distance from the vehicle. Officers located the defendant as well as [his] passenger . . . and took them into custody.
>
> We submit that defendant's criminal history fully supports our genuine fear that, if released from custody, defendant Wilson will likely cause the death of ·an innocent citizen while either· attempting to steal their car or while eluding the police. For that reason, the State would never extend nor accept a negotiated plea

4

> offer that contemplated defendant's release from custody – even to
> a drug rehabilitation center.[3]

Civ. Act. No. 10-3356 (MLC), ECF No. 89, at 5-7.)  Plaintiff alleges in his Amended Complaint

that the SCPO and Prosecutor Murphy "knowingly used a sentencing statement that was drafted

from a tainted fabr[i]cated police report, to deny Plaintiff entry into a drug treatment program.

(ECF No. 7-1 at 2.)  Plaintiff refers to the police report as the "Piazza Report."  (ECF No. 7-3,

Am. Compl. at ¶¶ 1-2.)

According to Plaintiff, Prosecutor Murphy failed to disclose in his brief opposing

Plaintiff's bail and drug treatment applications that Piazza fired his gun at Plaintiff after he had

surrendered, which caused Plaintiff to flee, and that Murphy had "constructive knowledge" that

Plaintiff had already sued the SCPO for concealing the Piazza Report.  (*Id.* at ¶¶ 2, 8.)  With

respect to Prosecutor Murphy, Plaintiff also contends that Prosecutor Murphy also stated in his

opposition brief that Plaintiff's addiction was not authentic even though Murphy had access to

Plaintiff's medical records, which indicated that Plaintiff had an authentic addiction.  Plaintiff

further alleges that Murphy induced other John Doe employees to represent false facts to the

sentencing court and ordered them to rely on Prosecutor Murphy's brief at Plaintiff's Drug Court

hearing.  He does not identify these John Doe employees as defendants.  (*Id.* at ¶ 11.)   In

addition to his federal and NJCRA claims, Plaintiff's Amended Complaint also alleges violations

of state law by Defendant Murphy, arising from the same alleged conduct.  (*Id.* at ¶ 12.)

---

[3] In addition to filing the instant action, Plaintiff also unsuccessfully attempted to reopen the 2010 action, alleging that the SCPO "breached" the settlement agreement. Plaintiff submitted this excerpt of Murphy's opposition brief as attachment to his letter to the Court in the 2010 action.  Because Plaintiff's Amended Complaint refers to Prosecutor Murphy's March 20, 2015 opposition brief, the Court finds it appropriate to include this except in the factual recitation because it helps to illuminate Plaintiff's allegations.

Plaintiff's Amended Complaint further alleges that Defendant SCPO "was responsible for [D]efendant Murphy's use of the Piazza Report after having constructive knowledge of its taintedness [sic] but, was reckless and disregardful of that fact."  (*Id.* at ¶ 3.)  He alleges that the SCPO knew that Piazza was forced to resign for fabricating the police report in connection with Plaintiff's 2008 arrest and should have "contain[ed]" the fabricated evidence.  (*Id.*)  He also alleges that the SCPO knew about the 2010 action, in which Plaintiff's sued Officer Piazza for excessive force, because they were "combin[e]d for settlement purposes, due to having the same insurance company." (*Id.* at ¶ 4.)  Finally, he alleges that the SCPO had evidence in their possession which indicated that the original sentencing judge was not aware that he drafted his sentencing report from a fabricated police report, and the SCPO also deceived the judge who sentenced Plaintiff in connection with his more recent 2015 eluding charges.  (*Id.* at ¶¶ 11.)

Finally, Plaintiff's Amended Complaint alleges that that Defendant Murphy's brief was filed as "an act of retaliation for bringing a past suit against [the SCPO]" and that both the SCPO and Murphy opposed his application for bail and drug treatment "as an act of retaliation."  (*Id.* at ¶¶ 6, 15.)  In his Amended Complaint, Plaintiff also asserts that he does not challenge his conviction for eluding or the length of his sentence and describes his civil suit as "malicious deprivation of entry into a drug treatment program."  (*Id.* at ¶ 6.)

Plaintiff seeks damages and several forms equitable relief, including: (1) an order declaring the Piazza Report to be "illegal" and restraining Defendants from using the Piazza Report; (2) a new drug treatment application hearing; and (3) entry into a drug treatment program in lieu of the sentence he is currently serving.  (*Id.* at ¶ 17.)

### III.   DISCUSSION

#### a.  Plaintiff's Motion to Amend

As noted above, Plaintiff submitted his Amended Complaint on September 16, 2015 in response to Defendants' motion to dismiss, which was filed on August 27, 2015.   (ECF Nos. 3, 7.)  The Prosecutor Defendants did not file a reply brief or otherwise address Plaintiff's motion to amend.

Although Plaintiff sought leave to amend, it appears that he could have filed his Amended Complaint as of right under Fed. R. Civ. P. 15(a).  Rule 15(a) of the Federal Rules of Civil Procedure allows a party to amend its pleading once as a matter of course within 21 days after serving it or within 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a). *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("[when] a defendant asserts the defense of failure to state a claim by motion, the plaintiff may amend the complaint once 'as a matter of course' without leave of court") (citations omitted).   Applying the prisoner mailbox rule to Plaintiff's filing, the Court will permit the amendment as of right. [4]

Generally speaking, "[a]n amended complaint supersedes the original version in providing the blueprint for the future course of a lawsuit." *Snyder v. Pascack Valley Hospital*, 202 F.3d 271, 276 (3d Cir. 2002); *see also Ryerson v. New Jersey*, No. CIV A 06-1214-JAG, 2007 WL 749813, at *1 n.1 (D.N.J. Mar. 7, 2007) (citing *Florida Dept. of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 706 n. 2 (1982) ("once accepted, an amended complaint replaces the

---

[4] Generally, a prisoner's complaint is deemed filed on the date that it is delivered to prison officials for mailing. *See Burns v. Morton*, 134 F.3d 109 (3d Cir. 1998) (citing *Houston v. Lack*, 487 U.S. 266 (1988)); *Mosch v. Brown*, No. CIV A 06-4067 JLL, 2007 WL 2682979, at *3 (D.N.J. Sept. 7, 2007).   The Court assumes for purposes of this Opinion that Plaintiff delivered his motion to amend to prison officials on the date he signed it.

original")).[5] Where a Plaintiff has filed an amended complaint in response to a pending motion to dismiss, "a trial court has discretion to deny the [pending] motion as moot (thereby effectively requiring a new motion) or to consider the merits of the motion as applied to the amended complaint." Rule 15 Amended and Supplemental Pleadings, 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 15 (explaining that the best view is that a Court is permitted to "transfer" the motion to the amended complaint if the same issues are presented in the original and amended complaint, but should require a defendant to file a new motion if applying the pending motion to the amended complaint would create confusion); *see also Sunset Financial Resources, Inc. v. Redevelopment Group V, LLC*, 417 F. Supp. 2d 632, 642 n.15 (D.N.J. 2006) (addressing arguments in motion to dismiss in relation to amended complaint to the extent possible); *Harnish v. Widener Univ. Sch. of Law*, CIV. No. 12-608 WHW, 2012 WL 2576353, at *3 (D.N.J. July 3, 2012) (finding that amendment of complaint as of right moots the previously filed motion to dismiss); *Demeter v. Buskirk*, 2003 WL 22416045, *5 (E.D. Pa. Oct. 20, 2003) (recognizing that proper filing of amended complaint renders moot previously filed motion to dismiss).

Here, Plaintiff's Amended Complaint appears to reiterate in large part the allegations in the original Complaint but, notably, adds a section 1983 claim for First Amendment retaliation

---

[5] "[T]he amended complaint 'supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.'" *W. Run Student Hous. Associates, LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171 (3d Cir. 2013) (citing *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (3d Cir. 1996) (emphasis added)); *see also* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2008). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. *Id.* To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id.*; *see also Stevenson v. County Sheriff's Office of Monmouth*, No. 13-5953, 2015 WL 512423, at *8 n.2 (D.N.J. Feb. 6, 2015) (explaining same).

and requests for additional relief.  As noted above, the Prosecutor Defendants have not responded to Plaintiff's Amended Complaint or filed a reply brief with the Court.  Plaintiff's Amended Complaint is also subject to *sua sponte* screening pursuant to 28 U.S.C. § 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  *See, e.g.*, *George v. Warden*, 523 F. App'x 904, 907 (3d Cir. 2013) (affirming practice of screening of second amended complaint under § 1915A).  Because the Amended Complaint has not yet been screened, the Court will screen the Amended Complaint for dismissal under § 1915A.  Where possible, the Court, in its discretion, will address the arguments made by Prosecutor Defendants in their motion to dismiss, but otherwise denies that motion without prejudice in light of its rulings on screening.

### b.  <u>Standards of Review</u>

The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915A is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).  Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted."  Fed. R .Civ. P. 12(b)(6).  When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  All reasonable inferences must be made in the plaintiff's favor.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).  In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create what amounts to a "probability requirement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The pleadings of *pro se* plaintiffs are liberally construed.  *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).  Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

The Prosecutor Defendants have also moved to dismiss under Rule 12(b)(1), which allows the court to dismiss a suit for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). This type of motion permits a party to raise the issue of Eleventh Amendment immunity at the earliest stage of litigation.  In *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690 (3d Cir. 1996), the Third Circuit Court of Appeals noted that "the Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Id.* at 694 n. 2 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)). The *Blanciak* court added that Rule 12(b)(1) was the proper means of raising the issue of whether the Eleventh Amendment bars federal jurisdiction.  *Id.*

### c.   Plaintiff's Section 1983 and NJCRA Claims[6]

Construed generously, Plaintiff's Amended Complaint alleges that the SCPO and Prosecutor Murphy opposed Plaintiff's applications for bail and entry into New Jersey's "Drug

---

[6] To the extent that Plaintiff raises New Jersey Civil Rights Act (NJCRA) claims mirroring his § 1983 claims, those NJCRA claims are addressed in tandem with his federal causes of action.  *See Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443–44 (D.N.J. 2011); *see also Chapman v. New Jersey*, Civ. No. 08–4130, 2009 U.S. Dist. LEXIS 75720, at *7, 2009 WL 2634888 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart...."); *Armstrong v. Sherman*, Civ. No. 09–716, 2010 U.S. Dist. LEXIS 55616, at *15, 2010 WL 2483911 (D.N.J. Jun. 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of

Court" in retaliation for Plaintiff's filing of the 2010 and 2012 section 1983 actions against Piazza, the SCPO, and its individual prosecutors.

To state a claim under § 1983, plaintiffs must show that the defendant, under the color of state law, deprived them of a federal constitutional or statutory right. *See Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000). Plaintiff describes his claims as "malicious deprivation of entry into a drug treatment program" and alleges that the Prosecutor Defendants opposed his bail and drug court applications in retaliation for Plaintiff's filing of the 2010 and 2012 actions. To prevail on a retaliation claim, a defendant must prove "(1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation." *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (citing *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2004)).

### i. Claims Against the SCPO and Claim for Damages against Prosecutor Murphy in his Official Capacity.

Although the Court proceeds under its *sua sponte* screening authority, it notes that Defendants have moved to dismiss on a number of theories. First, the Prosecutor Defendants argue that they are entitled to dismissal on the basis of Eleventh Amendment immunity (ECF No. 3-2, Moving Br. at 6-11); however, the Prosecutor Defendants waived their Eleventh Amendment immunity by removing the instant action to federal court. [7]  *See Lombardo v.*

---

analog to section 1983 ...."); *see generally Hedges v. Musco*, 204 F.3d 109, 122 n. 12 (3d Cir. 2000) (concluding that New Jersey's constitutional provisions concerning search and seizures are interpreted analogously to the Fourth Amendment).

[7] The Prosecutor Defendants also contend that the Court should dismiss Plaintiff's Complaint on the basis of *Younger* abstention. "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with <u>an ongoing state proceeding</u>." *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005) (emphasis added) (citing *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). *Younger* abstention is appropriate when (1) there are <u>ongoing state proceedings</u> that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate

*Pennsylvania, Dep't of Pub. Welfare*, 540 F.3d 190, 198 (3d Cir. 2008) ("hold[ing that] that the Commonwealth's removal of federal-law claims to federal court effected a waiver of immunity from suit in federal court").

The Prosecutor Defendants next contend that the section 1983 and NJCRA claims against the SCPO are not cognizable because the SCPO is not a "person" subject to suit under 42 U.S.C. § 1983. The Court agrees. *See Will v. Michigan Department of State Police*, 491 U.S. 58, 64, 70–71 (1989) (holding that state is not a "person" within the meaning of Section 1983); *Gordon v. Berkeley Twp. Police*, Civ. No. 10–5061, 2011 WL 2580473, at *4 (D.N.J. June 27, 2011) (holding that a "Prosecutor's Office" is not a "person" within the meaning of a Section 1983 suit) (citations omitted); *Baker v. Lewis*, Civ. No. 10–3438, 2010 WL 4117140, at *1 n. 1 (D.N.J. Oct.19, 2010) (same) (citations omitted); *Martin v. Red Lion Police Dep't*, 146 F. App'x, 558, 562 n. 3 (3d Cir. 2005). Although the removal of this action waives the Prosecutor Defendants' Eleventh Amendment immunity from suit in a federal forum, it does not affect the application of *Will's* personhood requirement. *See Didiano v. Balicki*, CIV. No. 10-4483 RBK/AMD, 2011 WL 1466131, at *8 (D.N.J. Apr. 18, 2011) (explaining that a state (or state entity) is still not a person for § 1983 purposes regardless of whether it waived its Eleventh Amendment immunity

---

opportunity to raise federal claims. *Id.*; *see also Clark v. Capaldi-Corsi*, No. CIV.14-2142 RBK AMD, 2015 WL 1541919, at *4 (D.N.J. Mar. 31, 2015) (finding *Younger* abstention applicable and dismissing claim for injunctive relief without prejudice where Plaintiff sought to have "Court intervene in plaintiff's presumably criminal proceedings in 'drug court'"). Although dismissal without prejudice on the basis of *Younger* abstention may have been appropriate when Plaintiff initially filed his Complaint because his criminal proceedings were then ongoing, it appears that that those criminal proceeding have concluded, as Plaintiff has notified the Court that he is currently serving a sentence at Northern State Prison. In any event, Defendants, who did not file a response to Plaintiff's Amended Complaint, have not established the first prong for *Younger* abstention, *i.e.*, that the criminal proceedings at issue are ongoing. As such, the Court declines to find that *Younger* abstention applies at this time.

by removing such claims to federal court), *aff'd*, 488 F. App'x 634 (3d Cir. 2012).  As such, the

Court dismisses with prejudice the section 1983 and NJCRA claims against the SCPO.

The Court also dismisses the official capacity damages claims against Prosecutor

Murphy, which are essentially damages claims against the State. [8]   *See Hafer v. Melo*, 502 U.S.

21, 27 (1991) ("State officers sued for damages in their official capacity are not 'persons' for

purposes of the suit because they assume the identity of the government that employs them.");

*see also Estate of Tyler ex rel. Floyd v. Grossman,* 108 F. Supp. 3d 279, 289 (E.D. Pa. 2015).

"Under New Jersey law, when county prosecutors and their subordinates perform law

enforcement and prosecutorial functions, 'they act as agents of the State,' and the State must

indemnify a judgment arising from their conduct. *Hyatt v. Cty. of Passaic*, 340 F. App'x 833, 836

(3d Cir. 2009) (citing *Wright v. State*, 169 N.J. 422, 778 A.2d 443, 461–62, 464 (2001)).

### ii.   Remaining Claims Against Prosecutor Murphy

Plaintiff also seeks damages from Prosecutor Murphy in his individual capacity and

injunctive/declaratory relief from Prosecutor Murphy in his individual <u>and</u> official capacities.

The Court addresses these claims in order.

### 1.   Prosecutor Murphy is Absolutely Immunity for Damages under Section 1983

---

[8] State officials in their official capacities do not have Eleventh Amendment immunity when sued for prospective injunctive relief.  *See Ex parte Young*, 209 U.S. 123 (1908).  The Court also notes that the Eleventh Amendment does not bar suits against officials in their individual capacities, even if the actions that are the subject of the suit were part of the officials' governmental duties.  *Hafer,* 502 U.S. at 30–31. Since Plaintiff has sued the Prosecutor Murphy in his official capacity for injunctive relief and in his individual capacity for damages <u>and</u> injunctive relief, Eleventh Amendment immunity does not apply to these claims,  *see, e.g., Munchinski v. Solomon*, 618 F. App'x 150, 156 (3d Cir. 2015), and the Court addresses them in the next section.

A state prosecuting attorney who acts within the scope of his or her duties in initiating and pursuing a criminal prosecution is not amenable to suit for damages under § 1983. *See Imbler v. Pachtman*, 424 U.S. 409, 410, 430-31 (1976) ("[I]n initiating a prosecution and presenting the State's case, the prosecutor is immune from a civil suit for damages under [§ ] 1983" and actions relating to the initiation and prosecution of a criminal matter); *see also Arsad v. Means*, 365 F. App'x 327, 329 (3d Cir. 2010) (*per curiam*); *Clark v. Capaldi-Corsi*, Civ. No. 14-2142 RBK, 2015 WL 1541919, at *4 (D.N.J. Mar. 31, 2015). As a general matter, "state prosecutors are absolutely immune from liability [for damages] under § 1983 for actions performed in a [judicial or] quasi-judicial role." *Munchinski v. Solomon*, 618 F. App'x at 153 (citing *Yarris v. Cnty. of Del.*, 465 F.3d 129, 135 (3d Cir. 2006)). "This immunity extends to acts that are 'intimately associated with the judicial phase of the criminal process,' " *id.* (quoting *Imbler*, 424 U.S. at 430–31), but does not encompass "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings," *id.* (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *see also Carter v. City of Philadelphia*, 181 F.3d 339, 356 (3d Cir.1999) (explaining that "participation in court proceedings and other conduct intimately associated with the judicial phases of litigation" are "actions performed in a quasi-judicial role") (internal quotation marks and citations omitted).

"Ultimately, whether a prosecutor is entitled to absolute immunity depends on whether [he or] she establishes that [he or] she was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation." *Id.* (citing *Yarris*, 465 F.3d at 136). It is well established that a prosecutor's appearance in court as an advocate of the state's position or the presentation of evidence at a hearing is protected by absolute immunity. *Clark*,

14

2015 WL 1541919, at *4 (citing *Burns v. Reed*, 500 U.S. 478, 492 (1991)). Furthermore, that a prosecutor had an illicit or even criminal motive is irrelevant to his immunity so long as he or she was performing a prosecutorial function. *See Duffy v. Freed*, Civ. No. 09-2978 JBS/JS, 2010 WL 3740659, at *2 (D.N.J. Sept. 17, 2010) *aff'd*, 452 F. App'x 200 (3d Cir. 2011) (citing *Rose v. Bartle*, 871 F.2d 331, 347 n.12 (3d Cir. 1989); *Jennings v. Shuman*, 567 F.2d 1213, 1221–22 (3d Cir. 1977) ("[A] prosecutor is entitled to absolute immunity while performing his official duties as an officer of the court, even if, in the performance of those duties, he is motivated by a corrupt or illegal intention.")); *see also Bush v. Dep't of Human Servs.*, 614 F. App'x 616, 621 (3d Cir. 2015) ("A [section] 1983 action for retaliatory prosecution cannot be brought against prosecutor, as prosecutor is absolutely immune from liability arising from decision to prosecute.") (citing *Hartman v. Moore*, 547 U.S. 250, 262 (2006)).

To determine whether Prosecutor Murphy is entitled to absolute immunity from Plaintiff's damages claims, the Court must examine the acts of misconduct alleged in the Amended Complaint and discern whether Prosecutor Murphy was acting in a judicial or quasi-judicial role, or was instead performing administrative or investigatory functions. *See Munchinski*, 618 F. App'x at 153-54 (citing *Wilson v. Rackmill*, 878 F.2d 772, 775–76 (3d Cir. 1989)). At the Rule 12(b)(6) stage, the Prosecutor Defendants must establish that "the allegations of [ Plaintiff's Amended Complaint] ... indicate the existence of absolute immunity as an affirmative defense; the defense must clearly appear on the face of the [Amended Complaint]." *Id.* at 776; *Light v. Haws*, 472 F.3d 74, 78 (3d Cir. 2007).

Here, Prosecutor Murphy is entitled to absolute immunity for the arguments he made in his legal brief opposing Plaintiff's bail and Drug Court applications because he was advocating for the state's position during the course of Plaintiff's criminal proceedings. *See Brown v.*

*Donio*, CIV. No. 14-5697 JBS, 2014 WL 5089579, at *3 (D.N.J. Oct. 9, 2014) (finding that prosecutors were absolutely immune for their allegedly improper denial of access to drug court); *Clark*, 2015 WL 1541919, at *4 (same).   Because he was acting in an advocate's role, his alleged bad motive or retaliatory purpose does not affect his immunity.  The Court thus dismisses the damages claims against Prosecutor Murphy.

## 2.  Plaintiff's Claims for Injunctive Relief Fail to State a Claim for Relief

The Court next addresses Plaintiff's claims for injunctive/declaratory relief.  Prosecutors, such as Defendant Murphy, are <u>not</u> immune from suit as to requests for declaratory or injunctive relief.  *See Blakeney v. Marsico*, 340 F. App'x 778, 779 (3d Cir. 2009) (citing *Supreme Court of Va. v. Consumers Union of the U.S.*, 446 U.S. 719, 736 (1980); *Jorden v. National Guard Bureau*, 799 F.2d 99, 110 (3d Cir. 1986)).   Plaintiff seeks injunctive relief in the form of an order requiring (1) defendants to refra[in] from using the Piazza [report]; (2) a new drug treatment application hearing; (3) entry into a long term drug treatment program.  He also seeks a declaration "that the Piazza Report is illegal and can never be used."  (ECF No. 7-3, Am. Complaint at ¶ 17.)  Plaintiff's requests for injunctive/declaratory relief fail to state a claim against Defendant Murphy for a number of reasons.

The Court first addresses Plaintiff's requests for a new drug treatment application and entry into a drug treatment program under New Jersey's "Drug Court" Program.  As explained below, even if Plaintiff were to prevail on his First Amendment retaliation claim, the Court could not grant the requested injunctive relief because Prosecutor Murphy does not have the authority under state law to provide the relief that Plaintiff seeks.

"Drug Courts are specialized courts within the Superior Court that target drug-involved 'offenders who are most likely to benefit from treatment and do not pose a risk to public safety.'"

*State v. Meyer*, 192 N.J. 421, 428–29 (2007); *see also State v. Maurer*, 438 N.J. Super. 402, 408 (App. Div. 2014). There are two general ways to be admitted to drug court. *See Maurer*, 438 N.J. Super. at 413-414. Defendants admitted to Drug Court who are subject to sentencing with a presumption of incarceration are assigned to Track 1 and required to serve a period of "special probation" under N.J.S.A. 2C:35–14. *Id*. Defendants with drug abuse problems who are not subject to a presumption of incarceration are assigned to Track 2 and are eligible for Drug Court under the general sentencing provisions of the Criminal Code pursuant to N.J.S.A. 2C:45–2. *See Id.*[9]

Under a prior version of the statute governing admission to Drug Court, "N.J.S.A. 2C:35-14(c) granted the prosecutor the right to object to an otherwise qualified defendant's entry into Drug Court and, absent a showing of 'gross and patent abuse of [the prosecutor's] discretion,' a court could not override that objection and admit the defendant to Drug Court." *Maurer*, 438 N.J. Super. at 414. On July 19, 2012, however, the Legislature repealed section (c) of N.J.S.A. 2C:35–14, thus removing the prosecutor's objection as an impediment to the sentencing court's decision to sentence a defendant to special probation. *See* P.L. 2012, c. 23 (N.J.S.A. 2C:35–14);

---

[9] In *State v. Bishop*, 429 N.J. Super. 533, 541 (App. Div. 2013) *aff'd*, 223 N.J. 290 (2015) the Appellate Division defined the two tracks for admission into Drug Court and explained the distinction as follows:

> "offenders sentenced to regular probation are not necessarily prison bound, based upon the nature and seriousness of their crimes and the general sentencing provisions of the Code. On the other hand, offenders sentenced to special probation are prison bound because their offenses, deemed more serious in the Code, carry a mandatory or presumptive term of imprisonment. Their eligibility for this form of non-prison sentence is not determined by weighing aggravating and mitigating factors as is the case with regular probation, but by reference to the enumerated statutory requirements listed in N.J.S.A. 2C:35–14"

*Id.* (citing *Clarke*, supra, 203 N.J. at 175).

*Maurer*, 438 N.J. Super. at 414; *State v. J.B.*, No. A-5244-10T4, 2012 WL 3628863, at *2 (N.J. Super. Ct. App. Div. Aug. 24, 2012) (explaining that "Legislature has determined that judges shall be vested with additional discretion in admitting defendants to the drug court program").  It is clear that under the current statutory framework of N.J.S.A. 2C:35-14, it is <u>the sentencing court</u>, not the prosecutor, who makes the final determination regarding an applicant's eligibility for Drug Court.  *See Mauer*, 438 N.J. Super. at 414.

    Here, Plaintiff was denied entry into Drug Court sometime after March, 3 2015.  Even if the Court assumes, without deciding, that Plaintiff could bring this action under section 1983 <u>and</u> could establish that Prosecutor Murphy violated his constitutional rights by retaliating against Plaintiff for bringing the 2010 and 2012 actions, Plaintiff cannot obtain the relief requested because Prosecutor Murphy cannot grant Plaintiff admission into Drug Court or provide Plaintiff

with a new Drug Court hearing.[10]   Pursuant to statute, that relief can only be provided by the

sentencing court.[11]   As such, the Court dismisses with prejudice these claims for relief.

---

[10] It is not clear whether some of the relief requested by Plaintiff is properly sought in a section 1983 action. As explained by the Third Circuit in *Doe v. Pennsylvania Bd. of Prob. & Parole*, 513 F.3d 95, 100 (3d Cir. 2008),

> [f]or prisoners, the difference between a civil rights action and a collateral attack is easy to describe. Challenges to conditions of confinement fall under § 1983. *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439, (1973). Attacks on the fact or duration of the confinement come under 28 U.S.C.A. § 2254. *Id.*

"[A] prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." *Preiser*, 411 U.S. at 489. Under Supreme Court precedent, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Where a prisoner's claim for injunctive relief would not "necessarily spell speedier release, it does not lie at 'the core of habeas corpus.'" *Id.* at 82 (request for new parole hearing properly brought as section 1983 action) (citing *Preiser*, supra, at 489).

Plaintiff contends in his Amended Complaint that he is not challenging his conviction or length of his sentence but only the conditions under which he will serve his sentence. He requests both a new Drug Court hearing and admission to Drug Court. The former would not necessarily reduce the length of his sentence, and it is not clear from the Amended Complaint whether the latter would necessarily result in a shorter sentence. *See, e.g.*, *Lee v. Williamson*, 297 Fed. App'x 147 (3d Cir. 2008) ("We agree with the District Court that Lee's claims concerning retaliation, denial of placement in the drug treatment program, and medical needs do not lie at the 'core of habeas' and, therefore, are not cognizable in a § 2241 petition."). Because the Court finds that Plaintiff cannot obtain either type of relief <u>from Defendant Murphy</u>, it need not reach this issue.

[11] It is not clear from the Amended Complaint whether Plaintiff ever attempted to inform the sentencing court about the Prosecutor's alleged retaliatory motives or the alleged inaccuracies in the prior sentencing report. Plaintiff states only that the SCPO and Prosecutor Murphy "deceived Judge Rahill[']s court [by relying on tainted fabricated evidence]." (ECF No. 7-3, Am. Compl. at ¶ 11.) It is also not clear whether Plaintiff ever appealed the denial of his Drug Court application in state court as a "gross or patent abuse of [the prosecutor's] discretion" or otherwise. *See State v. Hester*, 357 N.J. Super. 428 (App. Div. 2003) (Defendant challenging prosecutor's decision to deny him entry into drug court program must show that prosecutor's decision was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounted to clear error in judgment). This Court expresses no opinion as to whether such an appeal is still possible or whether it would be successful.

Plaintiff also requests that the Court enjoin the Prosecutor Defendants from using the Piazza Report in the future and declare the Report to be illegal.  However, even if Prosecutor Murphy violated Plaintiff's rights in the past, Plaintiff has not alleged in the Amended Complaint that the Piazza Report will be used again him again in the future.  As such, this claim for injunctive relief is purely speculative and does not present a "case or controversy" under Article III.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–110 (1983); *see also Naranjo v. City of Philadelphia*, 626 F. App'x 353 (3d Cir. 2015).  Plaintiff's request for declaratory relief is similarly flawed.  He seeks a declaration that the defendants violated his constitutional rights, but a party seeking a declaratory judgment "must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Naranjo*, 626 F. App'x at 356 (citing *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)); *see also Martin v. Keitel*, 205 F. App'x 925, 928 (3d Cir. 2006) (same).  Again, Plaintiff does not allege that he will be subject to the alleged conduct in the future, and, in any event, even if the defendants violated his rights in the past, he is not entitled to a declaration to that effect.  *Id.* (citing *Brown v. Fauver*, 819 F.2d 395, 399–400 (3d Cir. 1987)).  The Court therefore dismisses Plaintiff's the remaining claim for injunctive/declaratory relief.

### d.  The Court Declines to Exercise Supplemental Jurisdiction and Remands the Case Back to the Superior Court of New Jersey, Somerset County

Although the Complaint fails to state a federal claim, Plaintiff's Amended Complaint also asserts state law claims against Prosecutor Murphy under N.J.S.A. 2C:30-2 and 2C:30-6, which are criminal statutes dealing with Official Misconduct.[12]

---

[12] As explained by another court in this District, "private citizens are generally not allowed 'to enforce the state penal laws,' and '[v]iolations of these laws 'are left to the agencies charged with the enforcement of the criminal law.'"  *Mannarino v. Deutsche Bank Nat. Trust Co.*, No. CIV.A. 14-7771 MAS, 2015 WL 5383995, at *3 (D.N.J. Sept. 14, 2015) (citing *Matter of State Comm'n of Investigation*, 108 N.J. 35, 42 (1987)). A private cause of action could be implied,

Because the Court has dismissed the federal claims, the remaining potential basis for this Court's jurisdiction over Plaintiff's state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted).  Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1284–1285 (3d Cir. 1993).  In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'"  *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *United Mine Workers*, 383 U.S. at 726; *Growth Horizons*, Inc., 983 F.2d at 1284–1285.

Because Plaintiff's federal claims against the SCPO and Prosecutor Murphy have been dismissed pursuant to the Court's screening authority under 28 U.S.C. § 1915A(b) at the earliest

---

however, from the legislative intent of a state penal law.  *See id.* (finding that legislative intent of criminal statute at issue did not imply a private cause of action).  Because the Court declines to exercise supplemental jurisdiction in this case, it need not address whether a private cause of action could be implied by the legislative history of either N.J.S.A. 2C:30-2 or 2C:30-6.

stage of the litigation, the Court will exercise is discretion to decline supplemental jurisdiction over Plaintiff's state law claims and remand the case to state court.

### IV.    <u>CONCLUSION</u>

The Court dismisses with prejudice Plaintiff's federal and NJCRA claims against the SCPO and Prosecutor Murphy pursuant to the Court's authority under 28 U.S.C. § 1915A(b), and the Court declines supplemental jurisdiction over Plaintiff's remaining state law claims.  The matter will be remanded to the Superior Court of New Jersey, Somerset County.  The State's motion to dismiss is denied without prejudice, and Defendants may raise any remaining issues before the state court.[13]  An appropriate Order follows.

/s/      Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

Date: March 21, 2016

---

[13] The Court makes no determinations as to whether Plaintiff sufficiently alleges claims for relief under state law.